OPINION OF THE COURT
Peter A. Schwerzmann, J.
The preliminary executor herein filed a petition on September 9, 1991 seeking a determination of three issues. After a review of the probate petition and supporting documents, the aforesaid petition, the legal memoranda filed herein and the evidence presented at the hearing, the court finds the following facts to be true and relevant:
Paul H. Quackenbush (decedent) died testate on June 7, 1991, leaving a surviving spouse, Terri Quackenbush (widow), two infant children and two adult children, all of whom were duly represented and/or served with process in this proceeding. Decedent’s will was offered for probate but has not yet been admitted. Limited preliminary letters testamentary issued to the named executor, Addison F. Vars, III, on July 3, 1991.
The following events occurred on the dates indicated:
August 16, 1984 Decedent and widow purchase Friendly Island.
May 16,1985 Widow deeds her interest in island to decedent.
April 1988 Widow commences divorce action.
February 17, 1989 Decedent executes his will.
March 17,1989 Supreme Court orders pendente lite relief.
January 8,1990 Decedent mortgages Friendly Island to secure
Empire Cruise Lines, Inc. debt of $275,000.
December 19,1990 Decedent mortgages Friendly Island to secure
Empire Resort, Inc. debt of $20,000.
January 9, 1991 Divorce action dismissed.
August 29, 1991 Widow files notice of election under EPTL 5-1.1.
Presumably due to the contemporaneous divorce action *890 which he was not contesting, the decedent’s will makes no mention of his wife, the widow herein, leaving everything to his four children, two of whom were by a prior marriage. The decedent was undoubtedly surprised when the divorce action was dismissed, but his will was never changed, thus giving rise to the first issue raised in this proceeding — a request pursuant to SCPA 1421 for a determination of the validity of the widow’s right of election. After studying the issue, the executor conceded that there were insufficient grounds to challenge the widow’s right to elect under EPTL 5-1.1, and her right to do so is affirmed. Accordingly, she has standing to object to the proposed sale of real estate discussed below.
The executor received an offer to buy Friendly Island, one of the decedent’s major assets. The executor wanted to accept this offer, but due to the estate’s potentially adversarial relationship with the widow, and due to the involvement of minors in the estate, he prudently opted to forego his option to proceed with the sale under EPTL 11-1.1 (b) (5) (B) and/or under the power under the decedent’s will, both of which authorize the sale of property at public or private sale upon terms the fiduciary deems advisable. If that route had been chosen, the executor would have remained subject to criticism and possible surcharge in the likely event objections were filed upon his accounting.
SCPA 1901 provides an opportunity for such objections to be considered before such a sale is finalized. SCPA 1901 provides, inter alla, that the "court may authorize or direct the [sale] of a decedent’s real property * *. * for any of the purposes set forth in [SCPA 1902] * * * even if the proposed [sale] is or appears to be authorized by the will or by a statute.”
SCPA 1902 provides that the "real property may be disposed of for any or all of the following purposes:
"1. For the payment of the expenses of administration * * *
"3. For the payment of the debts of the decedent, including judgment or other liens, excepting mortgage liens, existing thereon at the time of his death * * *
"7. For any other purpose the court deems necessary.”
Although details regarding the amounts involved are understandably lacking, the executor will incur expenses of administration. The decedent had many debts other than the mortgage in question. The will did not specifically devise Friendly Island, so the decedent’s equity therein is a logical source of payment of these obligations. In fact, all parties agreed that *891 the sale would be beneficial to the estate due to favorable terms of sale, and by eliminating the expense and aggravation of owning summer property through the winter and beyond until another buyer materialized. The only question was whether the mortgages on the property could be satisfied from the proceeds of any such sale.
In most cases, it is unlikely that the decedent’s distributees or beneficiaries would be harmed by payment of such a mortgage because the proceeds of the mortgage would have been used to purchase the property or for some other purpose directly benefiting what has become the decedent’s estate, and all the survivors want is to make use of the equity in the property. In this case, the mortgages were given as collateral to secure loans made to two closely held corporations in which the decedent was the principal, but not sole shareholder. While there will be no difficulty in obtaining corporate notes payable to the estate in the amount paid to the bank to make the estate whole on paper, the financial situation of these corporations is substantially less than robust. Thus, it is possible that some or all of the $295,000 will be lost to the estate, which explains the unusual concern with payment of the mortgages.
As noted earlier, the two mortgages to Redwood National Bank were given after entry of the Supreme Court order for pendente lite relief pursuant to the Domestic Relations Law, which order provided, inter alla, "that neither party shall convey, encumber, dissipate or otherwise dispose of any marital asset except for transactions in the ordinary course of business, and only then for fair consideration.”
Thus, the questions were: (1) Can this sale be authorized under SCPA 1901? (2) If so, can the mortgages be satisfied? (3) Were these mortgages given in violation of the order of the Supreme Court? (4) If so, what consequences follow from such violation?
There is no question that the decedent left many debts to repay, perhaps exceeding the value of his assets. There is also no question that the estate will have administration expenses in some form. Therefore, the proposed sale can be considered without need for the court to consider exercising its discretion to approve the same under SCPA 1902 (7).
The widow’s contention that SCPA 1902 (3) precludes payment of the debt secured by the mortgage is quite intriguing. She believes that "For the payment of the debts * * * except *892 ing mortgage liens” (emphasis added) should be read literally to mean that any mortgage existing on a decedent’s property at his death cannot be satisfied, even if the property is sold, and cites three cases to support that contention.
In the Matter of Perkins (122 Misc 593, 596 [1924]), the Surrogate held under Surrogate’s Court Act § 234, the predecessor to SCPA 1902 and of which the latter "is essentially a restatement” (Semerad, Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 1902) that "[i]t is clear that this court has no power to direct the sale of decedent’s real property for the payment of a mortgage debt, for under [Surrogate’s Court Act § 234 (1)] mortgage liens are expressly excepted from the debts for the payment of which a sale may be directed.” Of the three cases cited by the widow, and apparently the only reported cases dealing with this aspect of this statute, Perkins is most directly on point. In reaching his conclusion noted above, Surrogate Bird noted that he had been unable to find a decision on point. The dearth of cases on this topic indicates either that few seriously believe that the Legislature’s intent was to preclude payment of mortgages upon the death of the mortgagor, or that intention is obvious.
Recognizing the incredulity of the latter, the widow contends that the mortgagee’s proper remedy is through foreclosure. This conclusion is allegedly supported by Matter of Bertucci (146 Misc 2d 1054 [1990]), and by Warren’s Heaton on Surrogates’ Courts (vol 3, § 259 [2] [a] [6th ed]), which says that
"Under the provisions of Article 19 of the Surrogates’ Court Procedure Act, no sale of the decedent’s property can be made in order to pay a mortgage debt.
"Obviously a proceeding in surrogate’s court is not required in case of a mortgage. The holder of the mortgage has his remedy by way of foreclosure action. It is, therefore, improper to sell the property in surrogate’s court to pay pif such a debt. Matter of Perkins”.
Actually, Matter of Bertucci (supra) deals with a creditor’s attempt to get a leg up on other creditors via leave to execute on real property under SCPA 1812, and has no real bearing on the issues raised here.
In Matter of Perkins (supra), the court was dealing with laws requiring payment of debts and expenses from personal property before real property could be considered for such a purpose. In Perkins all other debts and expenses were paid *893 from other assets, leaving an unsatisfied mortgage on real property to be considered. Mr. Perkins died intestate, so title to the real property of which he died seized vested in his heirs, subject to the mortgage. "[T]he heirs must satisfy the mortgage and recourse is not to be had to the administrator or to the personal estate for such purpose.” (Matter of Perkins, supra, at 597.)
In other words, SCPA 1902 (3) recognizes the general rule that real property passes outside the estate. If it happens to be subject to a mortgage, then the mortgagee must look first to the new owner(s) for payment, or bring a foreclosure action. Should there be a deficiency after foreclosure, the mortgagee has a valid but unpreferred claim against the estate or the distributees as the case may be.
In this case, the reasons to sell Friendly Island are not limited to the mortgage thereon, as was the case in Perkins (supra). The executor lacks sufficient liquid assets to pay other debts and administration expenses. This realty may be the only salable asset from which these obligations may be paid at this time, so the sale should be approved under SCPA 1902 (1) and (3). Once approved, assuming no bar to the same, the proposed payment of the mortgage is required to complete the sale. The contract requires clear title, so the satisfaction of the mortgages is incidental to the purpose of the sale.
It is admittedly difficult to consider the payment of mortgages totaling $295,000 as "incidental” when the net sales price is $382,500 after commissions. Nonetheless, the executor’s unrefuted position is that the proceeds from the sale of this parcel of real estate are needed to meet the estate’s legitimate debts and administration expenses. Should that prove to be untrue when the executor accounts, then this sale would be improper under SCPA 1901, the Surrogate would be without power to authorize the same, and thus the proceeds would not be commissionable (Matter of Perkins, supra). Of course, in this estate the sale is authorized by the will, so that logic may not apply. Also, the same parties stand to benefit in the same proportion from this property whether it is sold or is part of any bequest.
In Matter of Clark (271 App Div 691 [1947]), the third case dealing with these concepts, the court was asked to authorize the sale of property which would otherwise escheat to the State, because the decedent died intestate with no known distributees. Once again, the court held that unless the *894 proceeds of real property are necessary to pay one or more of the debts or expenses outlined in what is now SCPA 1902, the title to real property passes immediately upon death. The total of these debts or expenses must exceed the value of the other available assets before the Surrogate has authority to direct a sale under SCPA 1901, and SCPA 1902 (3) just clarifies that "debts” does not include existing mortgages. This means that the mortgage(s) cannot be added to the list of "legitimate” (per SCPA 1902) debts to justify the sale of real property, it does not mean that the mortgage cannot be paid out of the proceeds of a sale authorized on the basis of other debts or expenses. Therefore, this proposed sale, which is necessary to provide funds to a "cash poor” estate for the payment of debts and administration expenses, can be authorized under SCPA 1901 and the mortgages may be paid out of the proceeds of the sale. To hold otherwise and force the bank to foreclose would, in all likelihood, deprive the estate of its equity in this property. It is only when the payment of the mortgage is the sole reason for a proposed sale that the sale is precluded by SCPA 1902 (3).
The remaining questions concerning the possible violation of the Supreme Court’s order prohibiting encumbrances of marital property are also intriguing. The widow asserts that the two mortgages were given in violation of this order and thus should not be satisfied.
In order to preserve marital assets during their pending divorce, the Supreme Court ordered, inter alia> on March 17, 1989 that "neither party shall convey, encumber, dissipate or otherwise dispose of any marital asset except for transactions in the ordinary and regular course of business, and then only for fair consideration.” There is no question that Friendly Island was a marital asset encumbered by the decedent after this order was entered.
The decedent was the principal stockholder of Empire Cruise Lines, Inc., which owns and operates several large touring vessels on the St. Lawrence River. During its regular course of business in 1988 the corporation obtained a $200,000 line of credit with the Redwood National Bank. This obligation was personally guaranteed by the decedent as a condition of the loan. When the loan was not paid on its due date, the bank demanded that the decedent either repay the loan or offer suitable collateral for the same because the corporation was unable to repay this loan. After some negotiations during the latter part of 1989, the bank agreed to refinance the *895 corporation’s debt with a grid note of $200,000 to be repaid over five years and to extend an additional $75,000 line of credit if the decedent gave the bank a mortgage on Friendly Island, that being his only unencumbered asset of sufficient value to secure this loan. The decedent agreed to do this, and the deal was consummated on January 8, 1990. Under similar circumstances, a second mortgage on Friendly Island was given by the decedent to the same bank on December 12, 1990 to secure a $20,000 loan to Empire Resorts, Inc., another of decedent’s corporations.
It is quite normal for banks to require the principal stockholder(s) of closely held corporations to personally guarantee loans to the corporation. When the loan became in default, the decedent had to either arrange repayment or offer the bank suitable collateral. His choice is understandable, particularly since the bank was also willing to provide additional working capital of $75,000 as part of the package.
These transactions were in the ordinary course of business, and the additional $75,000 was fair consideration for that portion of the mortgage. Fair consideration has been defined as that "which is honest or free from suspicion, or one actually valuable, but not necessarily adequate or a full equivalent” and includes payment of an antecedent debt (Black’s Law Dictionary 479 [2d ed 1910], and cases cited therein). We need not evaluate with hindsight but merely determine whether what was received was of value and that the transaction was bona fide. Since the existing debt of $200,000 was closed out and a new arrangement entered into, it can be said that an antecedent debt was paid. However, the reality is that payment was postponed via a mutually acceptable schedule of installments. The decedent was and is still on the hook to guarantee payment of the $200,000 loaned to Empire Cruise Lines, Inc. and the $20,000 to Empire Resorts, Inc. The mortgages gave the corporations time to repay these loans with their earnings and postponed the decedent’s repayment on their behalf. This is fair consideration. Nothing was lost and gain was possible.
Therefore, the decedent did not violate the Supreme Court order, which means we need not consider what consequences, if any, might flow from such a violation in the case of a decedent. Of course, any consideration of contempt would not be for this court.
As for the Redwood National Bank, it was demonstrated *896 that the Supreme Court’s order was not filed in Jefferson County as required under Domestic Relations Law § 234, and the bank had no actual knowledge of this order at the time either mortgage was given. Therefore, it would be improper to deny repayment of the loans secured by the mortgages, even if the decedent were at fault.
Having considered all of the issues raised in connection with the proposed sale of Friendly Island under the contract to Wheeloan Financial Corp., it is hereby determined that said sale may be and hereby is approved pursuant to SCPA 1901, and that the mortgages to Redwood National Bank which are liens upon said island may be satisfied out of the proceeds of such sale.
The third principal issue raised in this proceeding concerns ownership of an antique motor boat called the "Rideau”. The decedent purchased this boat with his own funds on or about June 15, 1985. It was listed as his asset on his statement of net worth filed in conjunction with the divorce action between the parties. The boat was not listed on the widow’s statement of net worth also filed in the divorce action on or about September 28, 1990.
The boat was housed at Friendly Island, which was owned by the decedent alone since May 16, 1985, or one month prior to the purchase of the "Rideau”. The decedent was the principal operator of the boat, although the widow has also operated the boat with the decedent on board. The decedent paid all expenses connected with the "Rideau”.
The widow was precluded from offering convincing testimony regarding a gift of the "Rideau” by CPLR 4519, and the seller of the boat was not present to testify concerning the transaction. In addition, neither party had caused the "Rideau” to be registered at the Department of Motor Vehicles (as required by law), so that no inferences as to title could be drawn from that act. A purported registration was offered but not accepted into evidence due to conflicting testimony regarding the handwriting thereon.
In short, the widow failed to meet her burden to prove by clear, convincing and satisfactory evidence that the "Rideau” belonged to anyone other than the decedent alone. There was no acceptable evidence of the decedent’s intent to make an immediate gift, or of delivery. Likewise, there was no proof of joint ownership on any other theory. Therefore, the "Rideau” is an asset of the decedent’s estate.